**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-1311

UNCORK AND CREATE LLC,

        Plaintiff – Appellant,

  v.

THE CINCINNATI INSURANCE COMPANY; THE CINCINNATI CASUALTY COMPANY; THE CINCINNATI INDEMNITY COMPANY,

        Defendants – Appellees.

------------------------------

AMERICAN PROPERTY CASUALTY INSURANCE ASSOCIATION; NATIONAL ASSOCIATION OF MUTUAL INSURANCE COMPANIES,

        Amici Supporting Appellees.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  Irene C. Berger, District Judge.  (2:20−cv−00401)

Argued:  December 8, 2021                                Decided:  March 7, 2022

Before HARRIS and RUSHING, Circuit Judges, and KEENAN, Senior Circuit Judge.

Affirmed by published opinion.  Senior Judge Keenan wrote the opinion, in which Judge Harris and Judge Rushing joined.

**ARGUED:** James Christopher Martin, REED SMITH LLP, Pittsburgh, Pennsylvania, for Appellant.  Daniel G. Litchfield, LITCHFIELD CAVO LLP, Chicago, Illinois, for Appellees.  **ON BRIEF:**  Gary F. Lynch, Kelly Iverson, CARLSON LYNCH, LLP, Pittsburgh, Pennsylvania; Kevin W. Thompson, David R. Barney, Jr., THOMPSON BARNEY, Charleston, West Virginia; George L. Stewart II, Colin E. Wrabley, Matthew J. Louik, Elizabeth L. Taylor, REED SMIITH LLP, Pittsburgh, Pennsylvania, for Appellant.  Trisha A. Gill, Pittsburgh, Pennsylvania, Alan I. Becker, LITCHFIELD CAVO LLP, Chicago, Illinois, for Appellees.  Wystan M. Ackerman, ROBINSON & COLE LLP, Hartford, Connecticut; George E. Reede, Jr., ZELLE LLP, Washington, D.C.; Laura A. Foggan, CROWELL & MORING LLP, Washington, D.C., for Amicus Curiae.

BARBARA MILANO KEENAN, Senior Circuit Judge:

In this insurance coverage dispute, an insured seeks coverage for lost business income and other expenses resulting from the Covid-19 virus and a related, state-government order temporarily halting non-essential business activities. Upon our review, we hold that, under West Virginia law, the policy language requiring a "physical loss" or "physical damage" unambiguously covers only losses caused by, or relating to, material destruction or material harm to the covered property. Because the insured did not suffer such a physical loss or damage resulting from the pandemic or the government order, we affirm the district court's judgment dismissing the case.

I.

In March 2020, Uncork and Create LLC (Uncork) operated a "creative events" business at two art studio locations, in Barboursville, West Virginia and in Charleston, West Virginia.[1] On March 16, 2020, the Governor of West Virginia, Jim Justice, declared a state of emergency based on the Covid-19 pandemic. One week later, the Governor issued an executive order requiring that non-essential businesses in West Virginia "temporarily cease operations" (the closure order). The closure order permitted businesses to continue efforts to maintain inventory, "preserve the condition of the business's physical plant and equipment," ensure security, process payroll and employee benefits, and facilitate

---

[1] Because this appeal arises from the district court's dismissal order, we accept Uncork's well-pleaded allegations as true and draw all reasonable inferences in Uncork's favor. *Schilling v. Schmidt Baking Co.*, 876 F.3d 596, 599 (4th Cir. 2017).

employees' ability to "work remotely from their residences." Included in the closure order was an exception for businesses "that do not invite in the general public" and had five or fewer employees "in the office." The closure order took effect at 8:00 p.m. on March 24, 2020.

In compliance with the closure order, Uncork closed its two art studios. These closures caused Uncork to suffer "a substantial loss of business income" and other unspecified financial losses. When permitted to do so, Uncork re-opened its Charleston studio on June 11, 2020. However, Uncork permanently closed its Barboursville studio on April 24, 2020.

The commercial property insurance policy at issue in this case, purchased by Uncork from The Cincinnati Insurance Company[2] (Cincinnati), was in effect from December 7, 2017 through December 7, 2020 (the policy). Uncork is the named insured on the policy, which covers Uncork's two facilities (the covered property). The policy provides "Building and Personal Property Coverage" (the property loss provision), as well as other "coverage extensions," including "Business Income and Extra Expense" coverage (the business income loss provision).

Under the property loss provision, the policy covers "direct 'loss'" to covered property "caused by or resulting from any Covered Cause of Loss." The policy defines "Covered Causes of Loss" as "direct," "accidental physical loss or accidental physical

---

[2] Uncork also named The Cincinnati Casualty Company and The Cincinnati Indemnity Company, which are subsidiaries of Cincinnati.

4

damage." Certain excluded causes of "loss" are also contained in the policy, although none of those exclusions is at issue in the present appeal.

In the business income loss provision, the policy states that Cincinnati "will pay for the actual loss of 'Business Income' . . . due to the necessary 'suspension' of [the insured's] 'operations'[3] during the 'period of restoration.'" The policy requires that the "'suspension' must be caused by direct 'loss' to property" at the covered property, "caused by or resulting from any Covered Cause of Loss," as defined above.

The business income loss provision also provides coverage for "Extra Expense[s]" incurred "during the 'period of restoration.'" The policy defines "period of restoration" as "the period of time" beginning from the time the loss occurs and ending at the earlier of: "(1) The date when the [covered property] should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location."

Based on the temporary suspension of operations at Uncork's Charleston art studio and the permanent closure of its Barboursville studio, Uncork filed a claim with Cincinnati under the policy for its lost business income and certain additional expenses. In response, Cincinnati issued a letter denying Uncork's claim, stating that there was no evidence showing a "direct physical loss or damage" at Uncork's covered property.

Following this denial of coverage, Uncork filed a class action complaint against Cincinnati on behalf of itself and similarly situated plaintiffs. In its complaint, Uncork (1)

---

[3] The policy defines "operations" as the insured's "business activities occurring at" the covered property.

5

sought a declaratory judgment, under 28 U.S.C. § 2201 and W. Va. Code § 55-13-1 *et seq.*, that the policy language covered Uncork's "business interruption losses" resulting from the closure order and the Covid-19 virus, and (2) asserted a separate claim for breach of contract. Uncork alleged that as a result of the closure order, Uncork lost "use," "access," and "functionality" of its art studios that qualified as a "direct physical loss or damage" under the policy language. Alternatively, Uncork alleged that the Covid-19 virus itself caused a covered "loss" by preventing Uncork from using the covered property for its intended purpose.

In response, Cincinnati filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which the district court granted. The court held that neither the closure order nor the Covid-19 virus caused a "physical loss or physical damage" to the covered property under the terms of the policy. The court concluded that although the pandemic and the closure order adversely affected businesses, "the unambiguous terms of the [p]olicy do not provide coverage for solely economic losses unaccompanied by physical property damage." Uncork later filed a motion to amend the judgment, or alternatively, certify the issue to the Supreme Court of Appeals of West Virginia (the West Virginia court, or the state court). The district court denied the motion and the certification request. Uncork now appeals.

II.

We review de novo the district court's dismissal of the complaint under Rule 12(b)(6). *Schilling v. Schmidt Baking Co.*, 876 F.3d 596, 599 (4th Cir. 2017). We accept

6

Uncork's well-pleaded allegations as true and draw all reasonable inferences in Uncork's favor. *Id.*

Uncork contends that, pursuant to West Virginia law, Uncork's inability to operate its art studios as intended due to the closure order and the Covid-19 virus qualifies under the policy as a "physical loss" to the covered property.[4] Relying on *Murray v. State Farm Fire & Casualty Co.*, 509 S.E.2d 1, 17 (W. Va. 1998), Uncork asserts that "physical loss" can "exist in the absence of structural damage to the insured property." According to Uncork, the district court misapplied the decision in *Murray*, erroneously concluding that the policy language unambiguously requires that the loss result from a physical alteration to the covered property. We disagree with Uncork's position.

In resolving this issue, we consider established principles of West Virginia law addressing the interpretation of insurance policies.[5] When interpreting such contracts of insurance, we determine the parties' intent from the policy language itself. *Payne v.*

---

[4] In the district court, Uncork alternatively sought coverage for loss of business income based on the policy provision covering an "action of civil authority" prohibiting access to the covered property when such prohibition stems from a "Covered Cause of Loss." Although Uncork cites the "Civil Authority" provision of the policy in its brief, Uncork does not present any argument contending that the district court erred in dismissing the complaint in light of this provision. Thus, under Federal Rule of Appellate Procedure 28(a)(8), any such argument has been abandoned on appeal. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999); *see also Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 152 n.4 (4th Cir. 2012).

[5] *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599-600 (4th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)) (explaining that under a federal court's diversity jurisdiction, the court must apply substantive state law). The parties agree that West Virginia law governs the present policy.

*Weston*, 466 S.E.2d 161, 166 (W. Va. 1995); *Keffer v. Prudential Ins. Co. of Am.*, 172 S.E.2d 714, 715-16 (W. Va. 1970). We consider "all parts" of the policy together. *Payne*, 466 S.E.2d at 166.

When a policy term is unambiguous, we apply its plain meaning as written. *Murray*, 509 S.E.2d at 482; *Payne*, 466 S.E.2d at 166. In contrast, if a policy term is ambiguous or reasonably capable of more than one meaning, we construe the policy language in favor of coverage and against the insurer. *See Boggs v. Camden-Clark Mem'l Hosp. Corp.*, 693 S.E.2d 53, 58 (W. Va. 2010); *Murray*, 509 S.E.2d at 482.

To qualify as ambiguous, a policy provision must be "reasonably susceptible of two different meanings or [be] of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." *Glen Falls Ins. Co. v. Smith*, 617 S.E.2d 760, 768 (W. Va. 2005) (citation and emphasis omitted); *see Blake v. State Farm Mut. Auto. Ins. Co.*, 685 S.E.2d 895, 900-01 (W. Va. 2009) (explaining that a provision is ambiguous when "the court makes the determination that the contract cannot be given a certain and definite legal meaning" (citation omitted)); *Murray*, 509 S.E.2d at 482. Construction of ambiguous language, however, should not "contravene the object and plain intent of the parties." *Glen Falls Ins. Co.*, 617 S.E.2d at 768 (citation omitted). Ultimately, courts view the policy language as "a reasonable person standing in the shoes of the insured." *Id.* (citation omitted).

We turn to consider the policy language and whether either the closure order or the Covid-19 virus itself qualifies as a covered cause of loss within the meaning of the policy

8

language.⁶ As explained above, the policy defines "Covered Causes of Loss," as "direct," "accidental physical loss or accidental physical damage." Because these terms are not defined in the policy, we consider their plain meaning.

Initially, we observe that the word "accidental" means "occurring by chance." *Webster's Third New Int'l Dictionary* 11 (2002). The parties do not dispute that the pandemic and the closure order qualify as events that occurred within the meaning of this policy term. Therefore, we focus our inquiry on the disputed policy terms "physical loss" and "physical damage."⁷

We consider the plain meaning of the terms "physical loss" or "physical damage" as used with reference to a defined premises. In this context, the word "physical" means "relating to natural or material things" and the word "loss" means "the state or fact of being destroyed or placed beyond recovery: destruction, ruin." *Id.* at 1338, 1706. Finally, the word "damage" in this context means an "injury or harm . . . to property." *Id.* at 571. Thus,

---

⁶ We reject Uncork's suggestion that because the policy was intended as an "all-risk" policy, it necessarily covers any type of loss for any reason unless included as a stated exclusion. *See Chafin v. Farmers & Mechs. Mut. Ins. Co. of W. Va.*, 751 S.E.2d 765, 767 n.2 (W. Va. 2013); *Murray*, 509 S.E.2d at 7. The plain language of the policy states that coverage extends only to "Covered Causes of Loss," as defined by the policy.

⁷ Similarly, there is no dispute that any potential "loss" was "direct." *Webster's Third New Int'l Dictionary* 640 (2002) (defining "direct" as "proceeding . . . without deviation or interruption").

with reference to a defined premises, the plain understanding of the terms "physical loss" or "physical damage" is material destruction or material harm.[8]

The policy's business income loss provision incorporates the same requirement of "physical loss" or "physical damage" as the policy's property loss provision. Business income loss coverage applies to loss of business income and other expenses "due to the necessary 'suspension' of [the insured's] 'operations' during a 'period of restoration.'" The "'suspension' must be caused by direct 'loss' to property" that is "caused by or resulting from" a "Covered Cause of Loss," ultimately defined as a "physical loss" or "physical damage." And "period of restoration" is defined in the policy as the time needed to "repair[], rebuil[d] or replace[]" property or to locate a new permanent property.

This policy language is plain and unambiguous. The need to repair, rebuild, replace, or expend time securing a new, permanent property is a pre-condition for coverage of lost business income and other expenses.[9] Any alternative meaning of the terms "physical loss"

---

[8] We find no merit in Uncork's argument that the term "physical loss" is broader than the term "physical damage," thereby encompassing additional types of coverage. As explained above, in the context employed, the plain meaning of the word "loss" connotes a greater degree of harm than the word "damage," not a separate and distinct concept. Moreover, Uncork's argument on this point rests on an understanding of the word "loss" that would render meaningless the adjective "physical," which modifies "loss." *Payne*, 466 S.E.2d at 165-66 (requiring that "full effect" be given to the plain meaning of policy language); *see also Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704, 711 (10th Cir. 2021) (rejecting similar argument under Oklahoma law); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 404 (6th Cir. 2021) (same, under Ohio law).

[9] For this reason, we reject as untenable Uncork's reliance on an alternative dictionary definition of "loss" as the "failure to keep possession" or "deprivation," meaning "to keep from the possession, enjoyment, or use of something." *See Webster's Third New Int'l Dictionary* 606, 1338 (2002).

or "physical damage" that does not require a material alteration to the property would render meaningless this pre-condition to coverage for business income loss. *See Payne*, 466 S.E.2d at 166.

Contrary to Uncork's contention, this plain understanding of the terms "physical loss" or "physical damage" is consistent with the West Virginia court's decision in *Murray*, 509 S.E.2d 1. There, the owners of three homes filed claims for damage to their adjacent homes after boulders and rocks had fallen from an eroding "man-made highwall standing nearly 50 feet high" behind their properties. *Id.* at 4-5. Two of the three homes had been struck by the descending boulders. *Id.* at 5. Authorities evacuated all three families from their homes, and an engineer concluded that the rocks would continue to fall, preventing the families from returning home. *Id.*

One of the insurance policies at issue in *Murray* extended coverage to "direct physical loss" to the covered properties. *Id.* at 16-17. As relevant here, that insurer argued that even if the policy covered physical damage to the two homes struck by the falling rocks, the policy did not cover losses from "the *potential* damage that could be caused by future rockfalls." *Id.* at 16 (emphasis added). The West Virginia court disagreed and held that all three homes, including the one that had not been struck, "suffered real damage when it became clear that rocks and boulders could come crashing down at any time." *Id.* at 17. The court explained that "the plaintiffs' houses could scarcely be considered 'homes'" unless the highwall was stabilized. *Id.* Thus, the court held that a "physical loss" to property rendered "unusable or uninhabitable, may exist in the absence of structural damage." *Id.*

11

The holding in *Murray* that all three homes suffered damage was based on the present or imminent threat of material damage that rendered all three homes uninhabitable. Nothing appearing in the state court's analysis suggests that a "physical loss" to property can occur without existing or impending "material destruction" or "material damage" to the covered property.[10] To the extent that the state court addressed the plaintiffs' inability to use their homes, that loss inextricably was tied to the impending physical damage to all three homes.

In contrast, in the case before us, neither the closure order nor the virus itself prohibited Uncork from having access to the covered property. In fact, under the closure order, businesses with fewer than five individuals working at the premises were permitted to do so. To the extent that Uncork argues that it "lost" access to its property, such access was limited to the number of individuals working in the space, and whether members of the public were invited into the space, rather than the prohibition of any access to the property. Therefore, we conclude that the state court's decision in *Murray* does not render the phrase "accidental physical loss or accidental physical damage" reasonably susceptible to an alternative meaning that would omit the requirement of material destruction or material harm. *See Glen Falls Ins. Co.*, 617 S.E.2d at 768.

Here, neither the closure order nor the Covid-19 virus caused present or impending material destruction or material harm that physically altered the covered property requiring

---

[10] Because we conclude that the state court's decision in *Murray* does not render ambiguous the meaning of "physical loss" or "physical damage" under West Virginia law, we deny Uncork's alternative request seeking certification to the state court.

repairs or replacement so that they could be used as intended.[11] Thus, we hold that the policy's coverage for business income loss and other expenses does not apply to Uncork's claim for financial losses in the absence of any material destruction or material harm to its covered premises.

We observe that our holding is consistent with the unanimous decisions by our sister circuits, which have applied various states' laws to similar insurance claims and policy provisions.[12] *See Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 455-56 (5th Cir. 2022) (applying Texas law and holding that "direct physical loss" is not satisfied by loss of use of property without material alteration); *10012 Holdings, Inc. v. Sentinel Ins. Co.*, 21 F.4th 216, 222 (2d Cir. 2021) (same, applying New York law); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 401-02 (6th Cir. 2021) (same, applying Ohio law); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 332-33 (7th Cir. 2021) (same, applying Illinois law); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2

---

[11] To the extent that Uncork argues that the Covid-19 virus itself impaired the covered property by its presence, Uncork has not alleged that any such presence would require the repair, rebuilding, replacement, or permanent relocation necessary to trigger coverage under the business income loss provision.

[12] We are not persuaded by Uncork's reliance on *Chafin v. Farmers & Mechanics Mutual Insurance Company of West Virginia*, in arguing that the policy provisions are ambiguous. 751 S.E.2d 765, 769-70 (W. Va. 2013) (holding that a "provision in an insurance policy may be deemed to be ambiguous if courts in other jurisdictions have interpreted the provision in different ways" (citation omitted)). Although Uncork cites certain federal district and state court decisions applying law from other states that arguably support Uncork's interpretation of the term "direct physical loss," as we explain above, we conclude that Uncork's interpretation is unreasonable and inconsistent when considering the plain language of the policy as a whole. And we note that the uniformity of our sister circuits' decisions, applying state law from several jurisdictions, supports our holding in the present appeal.

F.4th 1141, 1144 (8th Cir. 2021) (same, applying Iowa law); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 892 (9th Cir. 2021) (same, applying California law); *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704, 710-11 (10th Cir. 2021) (same, applying Oklahoma law); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021) (unpublished) (same, applying Georgia law). And although we, like the district court, recognize that Uncork and other businesses suffered severe losses during the period that the closure order was in effect, we conclude that under the unambiguous terms of the policy, coverage is not available for Uncork's loss of business income and related expenses absent material destruction or material harm to the covered property.

### III.

For these reasons, we affirm the district court's judgment dismissing the complaint under Rule 12(b)(6).

*AFFIRMED*